UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
EDWARD L. WILLIAMS,

               Petitioner,         <u>MEMORANDUM AND ORDER</u>

     -v-                      21-CV-5151 (JS)

WILLIAMS KEYSER,

               Respondent.
------------------------------------X

APPEARANCES

For Petitioner:     Edward L. Williams, <u>Pro Se</u>
                  Prisoner No. 11-A-5180
                  Attica Correctional Facility
                  P.O. Box 149
                  Attica, New York  14011-0149

For Respondent:     Andrea DiGregorio, Esq.
                  Tammy J. Smiley, Esq.
                  District Attorney's Office, Nassau County
                  262 Old Country Road
                  Mineola, New York  11501

SEYBERT, District Judge:

        Following a state court jury trial, Petitioner Edward L. Williams ("Petitioner" or "Williams"), was convicted of: three counts of murder in the first degree (New York Penal Law (hereinafter, "Penal Law") § 125.27); three counts of attempted murder in the first degree (Penal Law §§ 110, 125.27); four counts of the murder in the second degree (Penal Law § 125.25); one count of attempted kidnapping in the first degree (Penal Law § 135.25); one count of kidnapping in the second degree (Penal Law § 135.20); five counts of robbery in the first degree (Penal Law § 160.15);

two counts of robbery in the second degree (Penal Law § 160.10); three counts of burglary in the first degree (Penal Law § 140.30); one count of burglary in the second degree (Penal Law § 140.25); and, two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03) (hereafter, the "Conviction"). Petitioner was sentenced to life in prison without parole and lower concurrent terms of imprisonment. Before the Court is Petitioner's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") raising eight grounds for relief (hereafter, "Petition"). (See ECF No. 1; see also Second Am. Pet., ECF No. 46.) Respondent Williams Keyser (Respondent")[1] has responded to the Petition, opposing it (see Opp'n, ECF No. 55); Petitioner has lodged a reply thereto (see Reply, ECF No. 57). For the reasons set forth below, the Petition is DENIED in its entirety, and the case is dismissed.

[Proceed to next page.]

---

[1]  By agreement with the Office of New York State Attorney General, Respondent is represented by the Office of the District Attorney for Nassau County.

BACKGROUND

I.    The Offensive Conduct[2] and Subsequent Investigation

              In the early hours of June 15, 2010, Petitioner and
Anthony Jackson[3] attacked two men, to wit, Tristan Theodore
("Theodore") and Brandon James ("James"; together with Theodore,
"the Victims"), at Theodore's house in Nassau County.  (Trial Tr.
at 657, 691, 696-97.)   Petitioner and Jackson entered the house
while threatening Theodore and James with guns.  (Id. at 657-58,
696-97.)   After stealing the Victims' valuables, including their
cell phones and Theodore's car keys, and threatening to kill the

---

[2]  The summary of facts is drawn from: the Petition; the pretrial
hearing transcript ("Hr'g Tr.") (see ECF No. 55-7); the trial
transcript ("Trial Tr.") (see ECF Nos. 55-3, 55-2, 55-1); the
sentencing transcript ("Sent'g Tr.") (see ECF No. 55-5);
Petitioner's counseled state court appellate brief ("App. Br.")
(see ECF No. 55-57), which Petitioner incorporates by reference
into his Petition in support of his claims (see Pet. at 6-8); and
Respondent's state opposition brief (see ECF No. 55-45).  The Court
also reviewed, and will address in turn, each of Petitioner's
post-Conviction motions and the respective, corresponding state
court decisions.

[3]  In a separate jury trial, Jackson was tried and convicted of:
three counts of murder in the second degree (Penal Law § 125.25);
three counts of robbery in the first degree (Penal Law § 160.16);
three counts of burglary in the first degree (Penal Law § 140.30);
one count of robbery in the second degree (Penal Law § 160.10);
one count of burglary in the second degree (Penal Law § 140.25);
one count of kidnapping in the first degree (Penal Law § 135.25);
one count of kidnapping in the second degree (Penal Law § 130.20);
and two counts of criminal possession of a weapon in the second
degree (Penal Law § 265.03), for which he was sentenced to
concurrent terms of imprisonment, the longest of which was
20-years-to-life.   See People v. Jackson, 125 A.D.3d 1002 (2d
Dep't 2015), leave denied, 25 N.Y.3d 1202 (2015).

Victims and their families, Williams and Jackson then duct-taped the Victims and forced them, first, into the cellar, and, later, into the backseat of Theodore's car. (Id. at 658, 698-99.) Once in the car, Petitioner threatened to kill both Victims, starting with James. (Id. at 662-63.) Noticing the car door remained unlocked, James jumped out of the moving car and, hereafter, heard a gunshot. (Id. at 663-64, 666-68, 708-10.) He ran back to Theodore's house and called the police; it was approximately 1:45 a.m. (Id. at 459, 664-65.) When police arrived, an officer located Theodore on the patio of a nearby house dying from a gunshot wound. (Id. at 472-73.) Having been shot through his lung, diaphragm, and liver, Theodore soon succumbed to his injuries. (Id. at 747-49.)

At Theodore's house, police recovered pieces of duct tape. (Id. at 482-84.) And, Theodore's abandoned car was recovered not far from where Theodore was found. (Id. at 550-53.) Surveillance video and footage from a private security camera and a nearby police plate reader showed a minivan with a New York State plate travelling to and from the crime scene immediately before and after the Victims were taken hostage and Theodore fatally shot. (Id. at 531-34, 538, 859-61.) The minivan was registered to Rackina White at an address in Brooklyn, New York (hereafter, the "Brooklyn Address"). (Id. at 862-63.)

4

Police began surveillance of the Brooklyn Address.  On June 29, 2010, Petitioner was observed leaving the residence at the Brooklyn Address and entering the minivan.  (Id. at 590.) Thereafter, police stopped the minivan, which Williams was driving without a license (hereafter, the "Vehicle Stop"); nor was Willimas able to produce any documentation on the minivan.  (Id. at 594.) He told police that the minivan belonged to his wife (hereafter, "Wife"), and he was moving it to avoid a ticket.  (Id. at 594-96.) Petitioner also told police that he and Wife were planning to move to North Carolina.  (Id.)  Police neither arrested nor searched Petitioner or the minivan at that time.

II.  Petitioner's Arrest and Trial

On August 10, 2010, Petitioner was arrested.  (Id. at 863-66.)  Thereafter, James identified Petitioner as one of the attackers; he first identified Petitioner from a photo array and then from a lineup.[4]  Subsequently, Petitioner was indicted in Nassau County on multiple charges, including murder in the first degree and robbery in the first degree.  (Id. at 676-77, 867.)

The Supreme Court of Nassau County held a combined pre-trial hearing for both Petitioner and Jackson, during which it addressed multiple matters, including the Vehicle Stop and probable cause to arrest Petitioner on August 10, 2020.  (Hr'g Tr.

───────────

[4]  On October 21, 2010, after Jackson was arrested, James recognized him from the lineup, as well.  (Id. at 679-80, 711.)

at 31-32, 85-87, 166.)  After the hearing, the court denied
Petitioner's suppression motion, holding, in a relevant part, that
the police had probable cause to arrest Petitioner.

At Petitioner's subsequent jury trial, the prosecution
called multiple witnesses, including James, who testified to the
events of the night of June 15, 2010.  While describing the attack
to which Petitioner and Jackson subjected the Victims, James
testified he saw Petitioner's face from "real close" and nothing
obstructed his view of Petitioner and Jackson.  (Trial Tr. at 666.)
James also described: Jackson putting duct tape over Theodore's
mouth; Petitioner duct-taped James' face but later removed it; and
Petitioner ordering James to see if there was something coming
into the cellar.  (Id. at 661, 674, 700-03.)  James further
testified to recognizing, from the August 11, 2010 lineup at the
police station, Petitioner as one of the perpetrators.  (Id. at
676-77, 680, 711).

The officer who responded to the June 15, 2010 scene and
who found Theodore dying testified as well.  So, too, did medical
examiner Dr. Tamara Bloom, who was present at the autopsy of
Theodore's body.  (Trial Tr. at 744-47.)  In addition, various law
enforcement officers testified about the investigation that led to
Petitioner's August 2010 arrest, including the Vehicle Stop,
during which police learned Petitioner's name and, subsequently,
determined his address.  (Id. at 590-96.)  The officer who

6

investigated the whereabouts of Theodore's phone testified the phone's GPS locator placed it on June 15, 2010 in a vicinity of Petitioner's Brooklyn Address. (<u>Id.</u> at 930-31.)  Investigation of additional phone records, including those of Wife and Jackson, showed that on June 15, 2015, Petitioner's, Wife's, and Jackson's phones were in close proximity of each other and within the zone of the crime scene, as established by cell towers that covered that area.  (<u>Id.</u> at 935-39.)

The prosecution also presented testimony from Richard Cobb, who, in August 2010, was incarcerated in the Nassau County Correctional Center where he came to know Williams.  (<u>Id.</u> at 796-97.)  Cobb explained that, while assisting Petitioner with legal paperwork in the prison library, Williams told Cobb that he (Williams) and Jackson had committed a robbery on Long Island of two young men whom he mistakenly believed to be "big drug dealers." (<u>Id.</u> at 800-01, 802-03.)  According to Cobbs, Petitioner also mentioned that one of men jumped out of the car and "tried to run for his life" but Petitioner shot at him "to slow him down."  (<u>Id.</u> at 801-02.)

Cobb further testified that, in violation of a court order precluding communication between him and Jackson, Petitioner asked Cobb to pass notes to Jackson, which Cobb agreed to do.  (<u>Id.</u> at 803.)  However, unbeknownst to either Petitioner or Jackson, Cobb was also reading and copying the notes being passed.  (<u>Id.</u> at

7

803-10.)  The notes appeared to mention an intent to harm a witness.  (Id. at 834.)  Also, at that time, Williams was inquiring of other inmates about James' whereabouts and whether there was a way to "reach" him.  (Id. at 808.)  Cobb began photocopying the notes and indicating on them who was the respective note's author and addressee.  (Id. at 809-10.)  The People's forensic expert testified the notes copied by Cobb were written by two separate authors and had marks on them made by a third person.  (Id. at 953-68.)  Since Williams refused to provide an handwriting sample, the expert was unable to confirm whether Petitioner was one of the notes' authors.  (Id. at 964.)

In exchange for his cooperation in Petitioner's prosecution, and through his attorney, Cobb sought to make a deal with the prosecution to shorten his prison sentence.  (Id. at 804-06, 826-27.)  The prosecution agreed; Cobb's time in prison was reduced from 16 to nine months.  (Id. at 805-06.)

During the course of the trial, after several witnesses had testified but before the People rested its case-in-chief (and before a five-day recess in the proceedings), the prosecution disclosed additional testing had been performed on the recovered duct tape, which revealed Jackson's fingerprints on it.  (Id. at 641-42.)  The defense argued the fingerprint evidence (hereafter, the "Report") should be excluded; after considering both sides' legal arguments, the court precluded the prosecution from offering

8

the Report in its direct case; however, the People would be permitted to use that Report as rebuttal if the defense argued non-participation or non-presence at the crime scene. (Id. at 790-91.)

After the People rested, Williams testified in his own defense, with the crux of his testimony presenting a "wrong person" defense; Williams insisted he was not the second perpetrator. He admitting having been twice convicted of grand larceny; he acknowledged he knew Jackson, with whom he was close, speaking to or seeing him almost daily. (Id. at 1014-15.) Williams also admitted writing the notes Cobb passed and copied; however, he further explained he refused to provide a handwriting sample because he did not understand why it was being requested of him. (Id. at 1018.) Continuing, Petitioner confirmed: Wife owned a minivan; the phone number the police traced was Wife's number; and, at times, he used both the minivan and Wife's phone. (Id. 992-94, 1000, 1029-30.)

However, while initially admitting the phone records demonstrated the phone was near the crime scene, Petitioner then denied that to be the case since he denied he was anywhere close to the crime scene. (Id. at 1053, 1022, 1024.) Williams also denied participating in the burglary, kidnapping, and murder of which he was accused. (Id. at 1024.) Instead, he presented the jury with a detailed alternative explanation as to what he was

9

doing on June 14 and 15, 2010.  (Id. at 992-1003.)  He also claimed
the notes Cobb copied were misinterpreted by the latter and the
prosecution.  (Id. at 1019-21.)  Williams told the jury he wanted
to ensure Jackson would not make any false incriminating statements
against him.  (Id.)  As Petitioner explained it, it was this fear
that prompted him to write to Jackson:

> I don't know if your lawyer told you yet but
> it's [sic] two ways to get found guilty, one
> is murder weapon, two, a victim eyewitness.
> Now, if you are in this for yourself worrying
> about yourself, let me know, they have me as
> a shooter, so they [are] going to come at you
> with the plea, not me.  You are not telling me
> nothing.  When they offer you the plea with
> the agreement of testifying against me, what
> are you going to do because they're going to
> come at you?

(Id. at 1043.)  Petitioner further denied having told Cobb he had
committed crimes or attempted to locate James while in prison to
prevent James from testifying.  (Id. at 1022-23, 1040.)  Petitioner
also testified he requested an attorney prior to being put in the
lineup but was not provided one at that time.  (Id. at 1023-24.)

Upon rebuttal, the People called Detective Paul Bigilin
("Bigilin"), who testified: he was assigned to analyze the duct
tape recovered from the crime scene: and he compared the
fingerprints on the duct tape to both Petitioner's and Jackson's
fingerprints.  (Id. at 1079-80, 1083.)  The Detective confirmed
both that the fingerprints on the duct tape matched those of
Jackson and Petitioner's fingerprints were not found on the duct

tape.   (Id. at 1079-83.)   During summation, defense counsel emphasized the fingerprints found on the duct tape were not Petitioner's, but Jackson's, asserting "[t]his absence of evidence . . . shows you [Petitioner] wasn't there that night." (Id. at 1095.) He also stressed there was no evidence corroborating James' testimony, who was the sole eyewitness; rather, despite James' testimony that Petitioner duct taped him, Petitioner's fingerprints were not found on the tape. (Id. at 1101.)

        Following deliberations, the jury found Petitioner guilty of: three counts of murder in the first degree; three counts of attempted murder in the first degree; five counts of robbery in the first degree; two counts of robbery in the second degree; two counts of burglary in the first degree; one count of kidnapping in the first degree; one count of kidnapping in the second degree; and two counts of criminal possession of a weapon in the second degree.  (Id. at 1246-54.)   It acquitted Petitioner of one count of burglary in the first degree.  (Id.)  On November 1, 2011, the court imposed a sentence of life without the opportunity of parole on all three counts of first-degree murder set to run concurrently with the lower sentences imposed on the remaining counts.[5] (Sent'g Tr. 11-13.)

---

[5]   The imposition of the sentence occurred after Petitioner had been ejected from the courtroom for refusing to comply with a court order to be seated during the proceeding; however, he continued to be represented by his defense attorney.  Petitioner was designated

III. <u>The Post-Conviction Proceedings</u>

Petitioner challenged his Conviction both directly and collaterally. To date, Petitioner has filed four <u>pro se</u> motions pursuant to Criminal Procedure Law ("C.P.L.") § 440.10 seeking to vacate his Conviction and sentence. Since Petitioner's <u>pro se</u> filings contained a wide variety of the claims, the Court addresses here only those that are relevant to claims asserted in his present habeas Petition.

A.    <u>First C.P.L. § 440.10 Motion</u>

In February 2015, before perfecting his direct appeal, Petitioner filed his first <u>pro se</u> § 440 motion. (<u>See</u> First § 440.10 Mot., ECF No. 45-61.) In it, among other things, Petitioner claimed his defense counsel was ineffective for: allegedly failing to challenge "the stop/seizure of the vehicle [Petitioner] was driving in Brooklyn, N.Y., on June 29, 2010," (<u>id.</u> at 40-41); and, failure to obtain "exculpatory" evidence from the prosecution. (<u>Id.</u> at 42-43.) He also claimed the late disclosure of Jackson's fingerprints on the duct tape and the corresponding Report was a violation by the prosecution. (<u>Id.</u> at 36-39.) Furthermore, Petitioner claimed his Sixth Amendment rights were violated because Bigilin testified about the

---

as a predicate felony offender, which was over the objection of Petitioner's counsel. (Sent'g Tr. 2-3.)

fingerprints rather than the person named in the Report, to wit, Detective John Laura. (Id. at 36, 54.)

On July 7, 2015, the court denied Petitioner's First § 440.10 Motion; it ruled Petitioner's claims were procedurally barred pursuant to C.P.L. § 440.10 (2)(b), since his appeal was still pending and there were sufficient facts on the record permitting an adequate review on direct appeal as to Petitioner's claims. (See July 7, 2015 Sup. Ct. Order, ECF No. 55-68, at 3.) After unsuccessfully seeking to reargue the motion (see ECF No. 55-67), Petitioner sought leave to appeal, which request was also denied. (See Mar. 4, 2016 Order of App. Div. 2d Dep't, ECF No. 55-58.)

B.    Second C.P.L. § 440.10 Motion

Next, while his direct appeal was still pending, Petitioner filed a second C.P.L § 440.10 Motion (see Second § 440.10 Mot., ECF No. 55-54), again raising the claim that his counsel was ineffective when he failed to challenge the Vehicle Stop, and also claiming his counsel failed to prepare any defense for the pre-trial hearing. (Id.)

On April 4, 2018, the court denied the motion, finding that the claims against Petitioner's defense attorney were procedurally barred and, in any event, without merit. (See Apr. 4, 2018 Sup. Ct. Order, ECF No. 55-50, at 1.) The Second Department denied Petitioner leave to appeal. (See ECF No. 55-46.)

13

C.    <u>Direct Appeal</u>

While the Second § 440.10 Motion was pending, Petitioner's appellate counsel filed Petitioner's appellate brief with the Second Department, arguing: (1) the trial court erred when it did not preclude the People from introducing evidence of the latent fingerprints on the duct tape matching those of Jackson (<u>See</u> App. Br., ECF No. 55-57, at 17-35.); and (2) the People committed a reversible error on summation when it (a) referred to facts not in evidence, and (b) appealed to the jurors' sympathy.[6] (<u>See</u> <u>id.</u> at 36-43.)   In addition to counsel's brief, Petitioner filed a <u>pro se</u> supplemental brief.  (<u>See</u> Suppl. App. Br., ECF No. 55-49.)  In sum, in his <u>pro se</u> brief, Petitioner claimed: (1) the People committed a <u>Brady</u> violation when it withheld the Report from the defense until trial; (2) he received ineffective assistance of counsel; and (3) his constitutional rights were violated when the police stopped the minivan during the Vehicle Stop.  (<u>See</u> <u>id.</u>)

The Second Department affirmed Petitioner's Conviction. <u>People v. Williams</u>, 176 A.D.3d 1122, 1123-24, 112 N.Y.S.3d 738, 739-741 (App. Div. 2d Dep't 2019).  In doing so, it held: (1) the trial court imposed an appropriate sanction upon the People for its failure to disclose prior to trial the evidence of latent

---

[6]  These appellate arguments correspond to Grounds One and Two raised by Petitioner in the instant habeas Petition.

finger prints located at the crime scene; (2) "most of the [challenged] prosecutor's remarks . . . were proper," and where they were not based on the evidence presented, the court's curative instructions sufficiently addressed them, and said remarks "were not so flagrant or pervasive as to have deprived defendant of a fair trial"; (3) the Brady claim was both (i) outside the record and, therefore, unreviewable on direct appeal, and (ii) unpreserved for appellate review since Petitioner never sought relief for the  alleged violation; (4) the claim regarding the legality of the police's Vehicle Stop was unpreserved for appellate review and the court would not exercise its interest of justice jurisdiction to review it; and (5) Petitioner's ineffective assistance of counsel claim was a "mixed claim", which required resolution pursuant to a § 440.10 motion, and therefore, the appellate division declined to review that claim on direct appeal. See id.  Petitioner sought leave to reargue, which the Second Department denied.  (See ECF No. 55-35.)

Both Petitioner and Petitioner's appellate counsel filed applications to the Court of Appeals, seeking leave to appeal from the Second Department's denial decision.  (See ECF Nos. 55-42 (Counsel's Appl.), 55-41 (Counsel's Support Aff.), 55-37 (Pro Se Appl.).)  Counsel first argued in detail that the Second Department erred in holding the trial court did not err in failing to preclude the fingerprint Report, and then summarily addressed the other

reasons previously raised in his Appellate Brief and Petitioner's pro se Supplemental Brief as reasons to grant leave to appeal. (See ECF No. 55-42.)    Additionally, in his pro se letter, Petitioner advanced the following claims: (1) the police's Vehicle Stop in Brooklyn was unlawful; (2) the People committed a Brady violation when it failed to timely turn over the fingerprint Report; and (3) he received ineffective assistance of counsel. (See ECF No. 55-37.)    The Court of Appeals denied leave.    See People v. Williams, 34 N.Y.3d 1134 (2020).

    D.   Application for Writ of Error Coram Nobis

On August 28, 2020, Petitioner moved the Second Department for a writ of error coram nobis, claiming he received ineffective assistance of the appellate counsel.    (See ECF No. 55-36.)    Specifically, Petitioner faulted his appellate counsel for not arguing "the latent fingerprint [Report] actually amounted to a Brady violation" and "failing to obtain the analysis report from the prosecutor concerning the latent fingerprint."    (Id. at 3-4.) Notably, Petitioner stated that the fingerprint Report was favorable to him since it supported the notion he, Petitioner, was not the person who had duct-taped James, but "supported [the] defense argument of mistaken identity."    (Id. at 4.)    The Second Department denied Petitioner's application, finding he "failed to establish that he was denied the effective assistance of appellate counsel."    People v. Williams, 192 A.D.3d 1049, 140 N.Y.S.3d 788

16

(App. Div. 2d Dep't 2021).  The Court of Appeals denied leave to appeal that decision.  See People v. Williams, 37 N.Y.3d 969 (2021).

    E.   Third C.P.L. § 440.10 Motion

    In September 2021, Petitioner filed his third § 440.10 motion, alleging he was deprived of due process and his constitutional right to confront witnesses.[7]  Specifically, Petitioner claimed: (1) the medical examiner was wrongly permitted to testify about Theodore's autopsy; (2) Bigilin was wrongfully permitted to testify about the fingerprint Report; and (3) the Report was Brady material, the late disclosure of which hindered Petitioner's ability to prepare a defense, thereby depriving him of due process.  (See Third § 440.10 Mot. Addendum, ECF No. 55-31.)

    While the Third § 440.10 Motion was still pending, on September 15, 2021, Petitioner moved this Court for a writ of habeas corpus.  (Pet., ECF No. 1.)  His initial Petition raised three grounds for relief: (1) the trial court's error in failing to preclude the fingerprint Report; (2) Petitioner was deprived of a fair trial due to an improper summation delivered by the People; and (3) Petitioner was deprived of his constitutional right to confront witnesses when the medical expert, who did not perform

---

[7]  Petitioner's Third § 440.10 Motion consists of two sets of filings: a motion filed on September 2, 2021, and an "Addendum Argument" filed on September 14, 2021.  (See ECF Nos. 55-25, 55-31.)

Theodore's autopsy, was permitted to testify about it.  (Id. at 6-10.)  However, since Petitioner's claim with respect to the right to confront witnesses was still pending (i.e., his Third § 440.10 Motion had not yet been ruled upon), the Court granted Respondent's motion to stay the Petition until a final decision was rendered on that claim.  (See Jan. 6, 2022 Elec. Order.)

On December 29, 2021,[8] the state court denied Petitioner's Third § 440.10 Motion, holding, pursuant to C.P.L. § 440.10(2)(c), that because there were sufficient facts in the record, Petitioner should have raised his Confrontation Clause claims on direct appeal, but unjustifiably failed to do so.  (Jan. 4, 2022 Sup. Ct. Order, ECF No. 55-30, at 2.)  With respect to Petitioner's Brady claim, the court explained the defense was made aware of the existence of the fingerprint Report during the trial and used said Report in advancing Petitioner's defense.  (Id. at 2.)  Moreover, the court found Petitioner failed to demonstrate: he specifically requested the Report; a reasonable probability a different outcome would have resulted with an earlier disclosure of the Report; or the Report created a reasonable doubt that did not otherwise exist.  (Id. at 2-3.)  Petitioner sought, and was denied, leave to appeal the decision to the Second Department. (See ECF Nos. 55-21, 55-22.)

---

[8]  The Court's December 29, 2021 Decision & Order was entered and filed on January 4, 2022.  See id. at 3.

Petitioner then moved for "leave to renew" his Third § 440.10 Motion, claiming the then-recently decided Supreme Court case, Hemphill v. New York, 595 U.S. 140 (2022), supported his claims of Confrontation Clause violations.  (ECF No. 55-17.) Further, Petitioner added a new claim:  His trial counsel was ineffective for not objecting to the autopsy testimony introduced based upon the Confrontation Clause grounds.  (Id. at 2.)

The state court denied Petitioner's renewal motion, ruling Petitioner failed to establish there had been a change in the law that would alter the state court's determination of Petitioner's Third § 440.10 Motion.  (See Apr. 7, 2022 Sup. Ct. Order, ECF No. 55-20.)  The court further explained that, even if Hemphill applied retroactively, it "d[id] not speak to the question raised in [Petitioner's Third § 440.10 M]otion, which was, in any event, determined primarily on procedural grounds."  (Id. at 1.)

Subsequently, upon Petitioner's request, this Court lifted the stay on the Petition.  (June 10, 2022 Elec. Order.) Thereafter, on July 7, 2022, Petitioner requested permission to amend his Petition to add the following claims: (1) Petitioner's attorney failed to object to the testimony of medical examiner; (2) Petitioner's attorney failed to object to Bigilin's testimony, and the late disclosure of the fingerprint Report was a Brady violation; (3) defense counsel failed to challenge the legality of the Vehicle Stop in Brooklyn, and (4) the police unlawfully

19

stopped/seized Petitioner's minivan during the Vehicle Stop.  (ECF
No. 12.)   The Court granted Petitioner's motion to amend but
ordered him to provide a status report to show that all claims
have been exhausted.  (July 19, 2022 Elec. Order.)   The Court
stayed the briefing schedule until after such report was filed.
(Id.)

>        F.    Fourth C.P.L. § 440.10 Motion

On May 40, 2023, Petitioner filed his Fourth § 440.10
Motion.  (Fourth § 440.10 Mot., ECF No. 55-14.)   Notably, this
motion reiterated claims presented in Petitioner's previous
§ 440.10 motion, as well as new ones, which mirrored those raised
in his Petition.  This time, Petitioner also sought appointment of
counsel and a private investigator to assist him in gathering
support for the claims he was raising.  (Id. at 10.)

On December 26, 2023, the state court denied
Petitioner's Fourth § 440.10 Motion and his request for counsel.
(Dec. 26, 2023 Sup. Ct. Order,[9] ECF No. 55-15, at 4, 5 n.3.)   In
its denial, the court ruled primarily that Petitioner's claims
were procedurally barred; the court also explained his claims of
ineffective assistance were virtually identical to those made in
his Second § 440.10 Motion, which Motion was denied, with the court
denying Petitioner's claims based upon a procedural bar, as well

---

[9]  The Court's December 26, 2023 Decision & Order was entered and
filed on January 4, 2024.  See Order at 6.

as finding the claims to be without merit. (Id. at 4.) And, addressing the merits of Petitioner's ineffective assistance claims, the court found counsel was not ineffective. (Id. at 5-6.) Petitioner sought leave to appeal the denial decision on his Fourth § 440.10 Motion, which the Second Department denied. (ECF No. 55-11.)

      G.   <u>The Instant Petition</u>

      In March 2024, Petitioner sought permission to amend his Petition, which the Court granted, directing him to file a "new, comprehensive petition incorporating all claims Petitioner seeks to raise." (See ECF No. 39; April 4, 2024 Elec. Order.) Petitioner then submitted a Second Amended Petition, consisting of his previous amendments to the Petition, as well as a new claim, Ground Eight, arguing the N.Y.S. Supreme Court "abused [its] discretion when [it] issued an arbitrary, capricious, whimsical and manifestly unreasonable judgment." (Second Am. Pet., ECF No. 46, at 1.) Specifically, Petitioner argues, because his Fourth § 440.10 Motion was denied without a hearing, there was "an unconscionable breakdown in the process of New York[']s corrective mechanism." (Id. at 2.) Respondent opposes all claims contained in the Second Amended Petition (ECF No. 55); in support of his Opposition, Respondent has submitted the affirmation from Joseph A. Lo Piccolo, Esq., Petitioner's trial attorney. (See Lo Piccolo Aff., ECF No. 56, at 2-5.) In his Reply, Petitioner reiterates,

and elaborated upon, some of his already raised claims, including those against his trial counsel.  (See Reply.)

DISCUSSION

I.  Applicable Law

    A.  Section 2254 Standard of Review

        "It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002).  Pursuant to 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas court, when considering a claim that was decided on the merits in a state court proceeding, may grant relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or" (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

        The AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be

22

unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000); see also McBride v. Perez, No. 13-CV-4792, 2015 WL 5245072, at *8 (S.D.N.Y. June 25, 2015) ("'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.'" (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). The requirements set forth by the AEDPA are strictly construed and, by design, erect a barrier to federal habeas relief founded upon the principle that "[s]tate courts are adequate forums for the vindication of federal rights" and are "presumptively competent[] to adjudicate claims arising under the laws of the United States." Burt v. Titlow, 571 U.S. 12, 19 (2013) (internal quotation marks and citation omitted).

Under § 2254(d)(1), a state court decision is considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Williams, 529 U.S. at 405-06. "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Green v. Travis, 414 F.3d 288, 296 (2d

Cir. 2005) (quoting _Williams_, 529 U.S. at 412) (alteration in original).  An "unreasonable application" of federal law occurs where the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." _Williams_, 529 U.S. at 407-08.  "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question." _White v. Woodall_, 572 U.S. 415, 427 (2014) (internal quotation marks and citations omitted).

        Regarding the second subsection of § 2254(d), courts have had "fewer opportunities to consider what constitutes an 'unreasonable determination of the facts'" pursuant to § 2254(d)(2), compared with § 2254(d)(1).  _Cardoza v. Rock_, 731 F.3d 169, 177 n.5 (2d Cir. 2013).  The state court's determination of the facts "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." _Wood v. Allen_, 558 U.S. 290, 301 (2010).  A finding may rise to the level of an unreasonable determination of the facts "where, for example, reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding or where the court ignored highly probative and material evidence." _Cardoza_, 731 F.3d at 177-78

24

(first citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 528 (2003); then citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 346 (2003)). However, "even if the standard set forth in section 2254(d)(2) is met, the petitioner still 'bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated.'" <u>Id.</u> at 178 (quoting <u>Epps v. Poole</u>, 687 F.3d 46, 50 (2d Cir. 2012)); <u>cf.</u> <u>Nowakowski v. New York</u>, No. 13-CV-3709, 2018 WL 6421056, at *6 (E.D.N.Y. Dec. 6, 2018) ("[F]or claims of 'unreasonable determination[s] of the facts' under paragraph (d)(2), an applicant bears the additional burden of 'rebutting the state court's factual findings 'by clear and convincing evidence.'" (quoting <u>Burt</u>, 571 U.S. at 20) (alteration in original)). As such, a state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." <u>Lynn v. Bliden</u>, 443 F.3d 238, 246-47 (2d Cir. 2006) (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule the state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." <u>Williams</u>, 529 U.S. at 389.

B.    Procedural Bars to Federal Habeas Review

1.    Failure to Exhaust

A habeas petition will not be reviewed by the district court unless "the applicant has exhausted the remedies available in the courts of the State."    28 U.S.C. § 2254(b)(1)(A). Exhaustion of state remedies requires a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365 (1995) (internal quotation marks and citation omitted; alteration in original).  The state courts must have had "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding" for there to have been exhaustion of state remedies, and therefore a state prisoner must "present the state courts with the same claim he urges upon the federal courts." Picard v. Connor, 404 U.S. 270, 276 (1971).

> Because the exhaustion doctrine is designed to
> give the state courts a full and fair
> opportunity to resolve federal constitutional
> claims before those claims are presented to
> the federal courts . . . state prisoners must
> give the state courts one full opportunity to
> resolve any constitutional issues by invoking
> one complete round of the State's established
> appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  In New York, a defendant must exhaust his claims by seeking leave to appeal to

the New York Court of Appeals.  See Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000).

### 2.   State Procedural Requirements

A federal court "may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." Davila v. Davis, 582 U.S. 521, 527 (2017); see also Jimenez v. Walker, 458 F.3d 130, 136 (2d Cir. 2006) ("[F]ederal courts may not review the judgment of a state court that 'rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision.'" (quoting Harris v. Reed, 489 U.S. 255, 260 (1989))).  This principle serves to "ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." Martinez v. Ryan, 566 U.S. 1, 9 (2012).

A state procedural rule is adequate if it is "firmly established and regularly followed by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks and citation omitted).  To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "'clearly and expressly' stat[ing] that its judgment rests on a state procedural bar." Harris, 489 U.S. at 261-63, 265 n.12.  Further, a state court's

27

reliance on an independent and adequate procedural bar forecloses habeas review even if the state court also rejected the claim on the merits in the alternative.   See, e.g., id., at 264 n.10 (explaining "a state court need not fear reaching the merits of a federal claim in an alternative holding" where it "explicitly invokes a state procedural bar rule as a separate basis for [its] decision" (emphasis in original)); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000) ("[W]here a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved."); Nowakowski, 2018 WL 6421056, at *6 (noting "[t]he bar applies even where the state court has also ruled in the alternative on the merits of the federal claim" (internal quotation marks and citation omitted)).

Notwithstanding the existence of a procedural bar to a claim under state rules, "a federal court may still review the claim on the merits [1] if the petitioner can demonstrate both cause for the default and resulting prejudice, or [2] if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice." Petronio v. Walsh, 736 F. Supp.2d 640, 654 (E.D.N.Y. 2010) (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991)).  As to the cause and resulting prejudice avenue, "[c]ause may be demonstrated with 'a showing that the factual or legal basis for a claim was not reasonably available to counsel,

28

. . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel.'" <u>Bossett v. Walker</u>, 41 F.3d 825, 829 (2d Cir. 1994) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986) (citations omitted)).[10] As to prejudice, a petitioner must demonstrate more than "a <u>possibility</u> of prejudice," but rather that the errors below "worked to his <u>actual</u> and substantial disadvantage." <u>Murray</u>, 477 U.S. at 494 (internal quotation marks and citation omitted; emphasis in original).

"The miscarriage of justice exception is concerned with actual as compared to legal innocence." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (internal quotation marks and citation omitted). A petitioner must demonstrate, by clear and convincing evidence, that he is actually innocent, and must support his claims "with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

---

[10]    Although ineffective assistance of counsel may, in some circumstances, constitute cause for a default, the claim for ineffective assistance "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" <u>Edwards v. Carpenter</u>, 529 U.S. 446, 452 (2000) (quoting <u>Murray</u>, 477 U.S. at 489); <u>see also</u> <u>Pitre v. Griffin</u>, No. 16-CV-6258, 2016 WL 7442653, at *11 (E.D.N.Y. Dec. 26, 2016) ("[T]he ineffective assistance claim must itself have been exhausted in the state court."). Here, no such claim has been raised by Petitioner, either in the state courts or in this Petition.

evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).

–*–*–*–

Furthermore, "[t]he Court is mindful that, as with all pro se pleadings, a habeas petition filed pro se is to be construed liberally." Crowder v. Ercole, No. 09-CV-3401, 2012 WL 5386042, at *2 (E.D.N.Y. Nov. 2, 2012) (citation omitted); see also Alonge v. Chappius, No. 12-CV-542, 2019 WL 1642449, at *6 (E.D.N.Y. Apr. 16, 2019) ("[T]he court must interpret petitioner's pleadings as raising the strongest arguments they suggest"). Pro se status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

   C.   Ineffective Assistance of Counsel Standard

Strickland v. Washington sets forth the relevant federal law governing claims of ineffective assistance of counsel. 466 U.S. 668 (1984). To prevail, a petition must establish (1) the "counsel's performance was deficient" and (2) "that deficient performance prejudiced the defense." Id. at 687. To make out a successful claim, both Strickland factors must be satisfied; a reviewing court is not required to "even address both components of the inquiry if the [petitioner] makes an insufficient showing on one." Id. at 697.

30

1.    The Deficient Performance Factor

"To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 688).  In evaluating this prong, "the court must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time,' and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 689).  Furthermore, "'[t]he failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance.'"  Parks v. Sheahan, 104 F. Supp.3d 271, 285 (E.D.N.Y. 2015) (quoting Hicks v. Ercole, No. 09-CV-2531, 2015 WL 1266800, at *23 (S.D.N.Y. Mar. 18, 2015)).

2.    The Prejudice Factor

To make a sufficient showing of prejudice, a petitioner:

> must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent

> challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.

Strickland, 466 U.S. at 694.

-*-*-*-

Furthermore, the "highly deferential Strickland standard is made doubly so on habeas review, as AEDPA requires deference to the state court's ruling." Bogan v. Brandt, No. 11-CV-1550, 2017 WL 2913465, at *9 (E.D.N.Y. July 6, 2017) (citation modified). "Bearing this deferential standard in mind, it is unsurprising that 'the great majority of habeas petitions that allege constitutionally ineffective counsel' fail." Miller v. LeClair, No. 20-CV-1546, 2024 WL 1797341, at *12 (E.D.N.Y. Apr. 25, 2024) (quoting Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001)).

## II.  Application

Petitioner challenges his Conviction by raising eight grounds, i.e.: (1) reversible error of the state court, which failed to preclude the People from introducing the fingerprint Report in its rebuttal; (2) the People's summation allegedly constituted a reversible error; (3) violation of Petitioner's rights enshrined in the Confrontation Clause of the Sixth Amendment; (4) ineffective assistance of trial counsel in failing to object to the medical examiner's testimony; (5) the People's alleged Brady violation in failing to timely disclose the Report and ineffective assistance of counsel connected thereto; (6)

ineffective assistance of counsel due to counsel's failure to challenge the legality of the Vehicle Stop; (7) the alleged unlawful stop and seizure of the minivan during the Vehicle Stop; and (8) the state court's decision on Petitioner's Fourth § §.10 Motion was purportedly "arbitrary and capricious". (See Pet. at 6-10; Second Am. Pet.; Reply.)  The Court addresses each of Petitioner's claims in turn.[11]

    A.   <u>Ground One</u>:
        <u>State Court's Ruling on the Fingerprint Report</u>

Petitioner asserts he is entitled to habeas relief because the state court committed reversible error when it permitted the People to present the fingerprint Report as rebuttal evidence at trial. (Pet. at 6.)  This claim is identical to the claim raised by Williams, through counsel, on direct appeal, and rejected by the Second Department. (See App. Br. at 17-36).

Since this claim was raised, and rejected, by the Second Department, and subsequently presented to the Court of Appeals, which denied Petitioner's appeal, it has been fully exhausted.

---

[11] To the extent Petitioner requests an evidentiary hearing (see Reply at 6), in accordance with Rule 8 of the Rules Governing Section 2254 Cases, after a thorough review of Petitioner's submissions and the state court record and transcripts, the Court finds an evidentiary hearing is not necessary to address Petitioner's claims. See Richardson v. Wolcott, No. 6:20-CV-6178, 2023 WL 4999832, at *8 (W.D.N.Y. Aug. 4, 2023). Therefore, the request for an evidentiary hearing is denied.

Nonetheless, the claim does not present a constitutional question or raise any issue that runs afoul of federal precedent.

As Respondent asserts, the relevant evidentiary discovery rules in effect in 2011, when Petitioner's jury trial was conducted, were governed by C.P.L. Art. 240. (See Resp. Support Memo, ECF No. 55 at ECF pp.30-72, at 2-3.) The rule outlined the appropriate timing of disclosure of the evidence and entrusted to the trial courts, in their discretion, the determination of appropriate remedies for violations of the state discovery rules. See, e.g., Jones v. Smith, No. 09-CV-6497, 2011 WL 7794174, at *8 (S.D.N.Y. Nov. 4, 2011), report and recommendation adopted, 2021 WL 1592190 (S.D.N.Y. May 7, 2012); see also People v. Jenkins, 98 N.Y.2d 280, 284 (2002).

On the fifth day of the jury trial, after eleven prosecution witnesses had already testified, the People disclosed to the court and defense that, the night before, additional testing was conducted on the duct tape recovered from the crime scene, and Jackson's fingerprints were found on it. (See Trial Tr. 641-42.) After a multi-day recess and after hearing the parties on the potential introduction of the fingerprint evidence, the court acknowledged the dilemma it faced due to the People's late disclosure of said evidence (including the Report), which required it to "fashion a remedy which will satisfy the appellate courts,

as well as cure the defendant's right to a fair trial and a fair

opening [statement]":

> [the court] will preclude the prosecution from
> offering that fingerprint in evidence on its
> direct case.
>
> Should the defense raise any issue around the
> question of whether or not the defendant or
> the codefendant were in the car together[, the
> court] will then permit, on a rebuttal case,
> the prosecution to introduce that evidence.
>
> The court advise[s the] defendant of that in
> advance of the defense in this case, so they
> could make whatever adjustments they believe
> to be lawfully necessary.
>
> [The court] believe[s] the penalty of not
> introducing it on the People's direct case is
> sufficient in this matter but [the court does
> not] want to preclude them from getting the
> truth before the jury.

(Trial Tr. at 789-90).

Petitioner's trial counsel made a timely and detailed

objection to the court's ruling (Trial Tr. at 790-794), thereby

properly preserving it for appellate review. Petitioner's

appellate counsel raised the issue of the People's late disclosure

of the fingerprint evidence to the Second Department, urging that

court to recognize the violation of the applicable state discovery

rule. (App. Br. at 17-36.) Notably, neither appellate counsel

nor Petitioner in his pro se filings to the Appellate Division or

the Court of Appeals, ever raised a federal law question. Citing

the provisions of C.P.L § 240.70 and various state court cases,

35

all addressing that state discovery rule, appellate counsel argued the trial court's remedy was inadequate, and Petitioner was prejudiced by the introduction of the fingerprint evidence (including the Report), which was disclosed only after the trial was already underway and a defense strategy formulated. (Id. at 27.) The Second Department disagreed, holding:

> [c]ontrary to the defendant's contention, the Supreme Court imposed an appropriate sanction for the People's failure to disclose prior to trial certain evidence pertaining to latent fingerprints found at the crime scene which the People contend match the fingerprints of the defendant's accomplice. Where a party fails to timely comply with a discovery demand, "the trial court has discretion to impose a broad range of sanctions, including preclusion" (People v. O'Brien, 140 A.D.3d 1325, 1327 [App. Div. 2d Dep't 2016]; see People v. Jenkins, 98 N.Y.2d 280, 284 [2002]). Here, the court precluded the People from using the fingerprint evidence in their case-in-chief and only allowed the People to introduce it on their rebuttal case after the defendant testified to his non-participation in the crime. The fingerprint evidence did not directly contradict the defense theory of nonparticipation in the crime (see People v. Jenkins, 98 N.Y.2d at 284-285). Further, the court afforded the defense time to prepare for the testimony of the People's witness as to the fingerprint evidence and granted the defendant's application to retain a fingerprint expert. Under these circumstances, the court's determination to preclude the People from using the evidence in their case-in-chief but to allow them to introduce the fingerprint evidence on their rebuttal case was an appropriate remedy (see People v. Jenkins, 98 N.Y.2d at 284-

285; <u>People v. Pham</u>, 118 AD3d 1159, 1161–1162 [2014]).

<u>People v. Williams</u>, 176 A.D.3d at 1123, 112 N.Y.S.3d at 739-40.

Both the defense argument and the Appellate Division's decision were based upon New York State law and did not raise any federal law questions. Therefore, on its face, Petitioner fails to raise a cognizable federal habeas claim in Ground One.

Even if the Court were to interpret Petitioner's Ground One claim as implicating a constitutional right to due process, the claim would fail under the terms of AEDPA. Petitioner neither explains the Supreme Court precedent violated nor raises the facts the state courts have purportedly unreasonably determined. Moreover, even if this claim could satisfy either of the AEDPA review standards as outlined in 28 U.S.C. § 2254(d), <u>i.e.</u>, demonstrate the violation or unreasonable interpretation of clearly established federal law, it still fails since Petitioner cannot show he suffered unfair prejudice because of the introduction of the Report or other late-disclosed fingerprint evidence. In addition to the fingerprint evidence, the jury was presented with overwhelming evidence of Petitioner's participation in the crimes, including the testimony of James and Cobb.

Finally, the defense strategy does not appear to have suffered prejudice because of the introduction of the fingerprint evidence. Indeed, Petitioner's trial counsel used it to bolster

Petitioner's position that he was not the perpetrator; in his summation, defense counsel argued, since only Jackson's fingerprints were recovered at the scene, "[t]his absence of evidence . . . shows you [Williams] wasn't there that night." (Trial Tr. at 1095.)

Petitioner's claim that the trial court's allegedly erroneous evidentiary ruling entitles him to habeas relief does not present a question of a federal law violation and is, in any event, without merit. Therefore, Ground One fails.

B.    Ground Two:  Prosecutor's Summation Remarks

Next, Petitioner asserts he is entitled to habeas relief because the prosecutor made some inappropriate and prejudicial remarks in his summation to the jury. (Pet. at 7-8.)  In support of this claim, Petitioner references the appellate brief filed on his behalf before the Second Department on direct appeal. (See App. Br. at 36-43.)  The Claim is fully exhausted.

In denying Petitioner's summation-based claim, the Second Department held:

> most of the prosecutor's summation remarks that are challenged by the defense were proper, as within the broad bounds of permissible rhetorical comment or fair comment on the evidence (see People v. Galloway, 54 N.Y.2d 396, 399, 446 N.Y.S.2d 9, 430 N.E.2d 885; People v. Ashwal, 39 N.Y.2d 105, 109-110, 383 N.Y.S.2d 204, 347 N.E.2d 564).  To the extent that some of the prosecutor's remarks were not based on the trial evidence, those remarks were sufficiently addressed by the

> curative instructions issued by the Supreme
> Court (see People v. Marks, 128 A.D.3d 852,
> 853, 9 N.Y.S.3d 120; People v. Philips, 120
> A.D.3d 1266, 1268, 992 N.Y.S.2d 104), and were
> not so flagrant or pervasive as to
> have deprived the defendant of a fair trial
> (see People v. Rhodes, 115 A.D.3d 681, 683,
> 981 N.Y.S.2d 548; People v. Ward, 106 A.D.3d
> 842, 843, 964 N.Y.S.2d 642).

People v. Williams, 176 A.D.3d at 1123-24, 112 N.Y.S.3d at 740.

Similar to Ground One, here, Petitioner fails to articulate the constitutional violation or how the Appellate Division's determination is contrary to, or an unreasonable application of, clearly established federal law. Nevertheless, even when liberally construing this claim as one raising a due process violation, Petitioner fails to demonstrate how any of the prosecutor's remarks[12] have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986); see also, e.g., Green-Faulkner v. Lowerre, No. 22-CV-0624, 2024 WL 1769316, at *13-14 (E.D.N.Y. Apr. 24, 2024) (stating, inter alia, even if not procedurally barred, petitioner's prosecutorial misconduct claim

---

[12]    Based upon the appellate brief, the challenged remarks Petitioner insists violated his due process rights are: (1) the prosecutor stating Petitioner had "at least" two felony convictions where the court permitted him to mention there were only two felony convictions; and (2) the prosecutor's remarks appealing to the jury's sympathy and stating this was the last chance for justice for the victim and his family. (App. Br. at 36.) Defense counsel objected to both instances and was overruled by the court; the court also denied Petitioner's request for a mistrial. (See id.)

would not support habeas relief, because the "trial court provided a proper curative instruction to the jury that summations are not evidence, and this Court must presume the jury followed that instruction absent any evidence to the contrary" (citation omitted)); see also McManus v. Vann, No. 18-CV-3800, 2019 WL 3767538, at *13 (E.D.N.Y. Aug. 9, 2019) (declining habeas relief, even assuming arguendo prosecutor vouched for her witness, because petitioner's overwhelming evidence of guilt prevented any actual prejudice). Therefore, Petitioner's claim for habeas relief based upon Ground Two fails as well.

C.   Ground Three:  Confrontation Clause

Petitioner argues he is entitled to habeas relief on the ground that his right to confront witnesses under the Confrontation Clause of the Sixth Amendment was violated. (Pet. at 8-9.)  As he did in the state courts, here, Petitioner contends the testimony of the medical examiner, Dr. Tamara Bloom, one of the People's witnesses, violated the Confrontation Clause.  His claim is unavailing.

Section 440.10(c) provides, in pertinent part, for a denial of a claim when:

> sufficient facts appear on the record of the proceeding underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, [but] no such appellate review or determination occurred owing to the defendant's unjustifiable failure to . . .

40

> raise such ground or issue upon an appeal
> actually perfected by him . . . .

C.P.L. § 440.10 (2)(c). Moreover, "a motion pursuant to C.P.L. § 440.10 cannot be used as a vehicle for an additional appeal or as a substitute for a direct appeal." Pickney v. Lee, No. 10-CV-1312, 2020 WL 6136302, at *9 (E.D.N.Y. Oct. 19, 2020) (citation modified). Indeed, the Second Circuit recognizes as an independent and adequate state law ground precluding federal habeas review a state court's reliance upon C.P.L. § 440.10(2)(c) in denying a defendant's claim to vacate a judgment, when the defendant failed to raise that same claim on direct appeal. See Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997).

That is what occurred here: The state court rejected Petitioner's medical-examiner-confrontation claim as procedurally barred, when Petitioner raised it in his Third § 440.10 Motion. (Dec. 29, 2021 Sup Ct. Order, ECF No. 55-30, at 2-3.) The court explained:

> With respect to the defendant's claim
> regarding the Constitutional propriety of the
> testimony[y] of Dr. Bloom . . . , the
> defendant's motion must be denied because
> sufficient facts appear in the record that
> would have permitted the defendant to have
> raised this claim on his direct appeal from
> the judgement of conviction, but he
> unjustifiably failed to do so. See CPL
> 440.10(2)(c). In any event, the claim is
> meritless. [Dr. Bloom] testified as to [her]
> own observations, rather than relying on the
> statements or reports of others. Inasmuch as
> the defendant, through counsel, availed

41

> himself of the opportunity to cross examine
> [Dr. Bloom], [her] testimony does not run
> afoul of the Confrontation Clause.

(Id. at 2 (footnote omitted).)  Hence, there is no doubt that in denying this claim, the state court explicitly invoked the procedural bar of C.P.L. § 440.10(2)(c).  Accordingly, given the adequate and independent finding of procedural default here, together with Petitioner's failure to show cause for his default and the resulting prejudice or to demonstrate that a failure to review his claim would result in a fundamental miscarriage of justice, this Court is barred from engaging in federal habeas review of this claim.[13]  Even if that were not so, the lower court's decision unequivocally establishes Petitioner's confrontation claim as Dr. Bloom is wholly meritless since the record shows the medical examiner testified to her own observations of the autopsy (Trial Tr. at 747), and the defense counsel had an opportunity to

---

[13]  The Court recognizes Petitioner raised his medical-examiner-confrontation-based claim again in 2022, when he moved for "leave to renew" his Third § 440.10 Motion based upon the then-recently decided case, Hemphill v. New York, 595 U.S. 140 (2022).  (See ECF No. 55-17.)  However, the state court denied the renewal motion, finding Hemphill, even if it were to apply retroactively, "does not speak to the question raised in the defendant's motion."  (Apr. 7, 2022 Sup. Ct. Order, ECF No. 55-20, at 1.)  Moreover, Petitioner's attempt to reargue his Third § 440.10 Motion does not invalidate the procedural bar invoked by the state court in denying the Third § 440.10 Motion.  Likewise, neither does the state court's finding that the medical-examiner-confrontation claim was meritless negate the invocation and applicability of the state's well-relied-upon procedural bar.  See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989).

cross-examine her.    Therefore, there is no basis to grant habeas relief pursuant to this claim; thus, Ground Three is rejected.

      D.    <u>Ground Four:  Ineffective Assistance of Trial Counsel For Failure to Object on Confrontation Clause Grounds</u>

      Petitioner's next claim is directly related to the one addressed in Ground Three.    Petitioner claims his trial counsel was ineffective because he did not raise a Confrontation Clause objection to Dr. Bloom's testimony. (ECF No. 12 at 2-3; <u>see</u> Second Am. Pet.)

      As a preliminary matter, Petitioner failed to fairly present this claim in the state courts; yet, he did not default on his opportunity to do so, as even record-based claims of ineffective assistance of counsel can be raised at any point on a C.P.L § 440.10 motion.    <u>See</u> C.P.L. § 440.10(2)(b), (3)(a). Therefore, this claim is unexhausted.    Nevertheless, the Court can deny an unexhausted claim on the merits if the claim is plainly without merit.    <u>See</u> 28 U.S.C. § 2254(b)(2); <u>see also</u> <u>Torres v. Mazzuca</u>, No. 05-CV-3970, 2008 WL 2467051, at*6 (S.D.N.Y. June 17, 2008).

      Here, Petitioner's claim of ineffective assistance of trial counsel is wholly without any merit as it fails to satisfy <u>Strickland</u>.    As explained above, Dr. Bloom's testimony did not violate the Confrontation Clause as she testified about her own observations    of    the    autopsy    and    was    available    for

43

cross-examination by the defense. Counsel's failure to make a meritless and frivolous argument to the contrary does not constitute a deficient performance within the meaning of Strickland. See, e.g., United States v. Kirsh, 54 F. 3d 1062, 1071 (2d Cir. 1995) (instructing "the failure to make a meritless argument does not rise to the level of ineffective assistance"); United States v. Herron, No. 22-CV-2538, 2025 WL 821883, at *9 (E.D.N.Y. Mar. 14, 2025) (rejecting ineffective assistance claim brought in Section 2255 habeas petition because "failure to make a meritless argument does not rise to the level of ineffective assistance" (quoting Kirsh)); see also United States v. Reeves, No. 02-CV-9309, 2005 WL 3288012, at *8 (S.D.N.Y. Dec. 2, 2005) ("The failure to make demonstrably futile arguments cannot constitute constitutionally ineffective assistance of counsel."). Furthermore, while appropriately deferring to the state court's factual determinations, this Court's independent review of the state record does not uncover any facts that would contradict the state court's findings. (See Dec. 29, 2021 Sup. Ct. Order at 2.) Thus, while Petitioner's claim raised in Ground Four was not fairly presented in the state courts and is unexhausted, because it is wholly lacking in merit, it does not suffice as a basis to grant habeas relief.

44

E.   Ground Five:  Ineffective Assistance of Counsel Claim
     Based Upon Failure to Object to Bigilin's Testimony
     and Related *Brady* Claim

Next, Petitioner claims his counsel was ineffective because he did not object to the trial testimony of Bigilin about the fingerprint evidence.  (ECF No. 12 at 3-5; <u>see</u> Second Am. Pet.) He also claims the late disclosure of the Report was a <u>Brady</u> violation.  (ECF No. 12 at 3-5.)  Petitioner insists that both claims warrant habeas relief.

1.   Ineffective Assistance Claim

As an initial matter, Petitioner's ineffective assistance claim with respect to his counsel not objecting to the Bigilin's testimony about the fingerprint evidence is unexhausted. Nevertheless, the Court rejects this claim as patently meritless since it fails to satisfy the <u>Strickland</u> test.  <u>See</u> 28 U.S.C § 2254(b)(2).

Notwithstanding Bigilin's trial testimony that he personally made the fingerprinting comparisons, Petitioner challenges the veracity of said testimony; he supports his position of doubt by relying upon the Report containing two signatures, since one is illegible and the other one is not Bigilin's.  (<u>See</u> ECF 12 at 3-5.) Of relevance:  The Report was disclosed after the the People's case-in-chief had been completed (<u>see</u> Resp. Support Memo at 20-21); therefore, it could not have informed counsel's performance at the time of Bigilin's testimony.  (<u>See</u> <u>id.</u> at 21.)

Moreover, Bigilin unequivocally testified that the latent fingerprints on the duct tape where those of Jackson, i.e., they were not Petitioner's. (Trial Tr. 1078-80.) Hence, similar to Dr. Bloom's testimony, defense counsel had no reason to object to Bigilin's testimony on Confrontation Clause grounds. Counsel's failure to lodge a meritless and baseless objection does not constitute deficient performance under Strickland. See, e.g., Herron, 2025 WL 821883, at *9.

Further, Petitioner is unable to show prejudice since he acknowledged the evidence of Jackson's—and not his—fingerprints on the duct tape was favorable to the defense. (See Coram Nobis Pet. at ¶¶ 3, 4.) It cannot be seriously debated that a failure to preclude evidence favorable to the defense—in other words, allowing favorable evidence in—does not prejudice the defendant. Therefore, Petitioner's claim of ineffective assistance here, while unexhausted, is nevertheless denied as it fails on the merits.

2. *Brady* Claim

With respect to the late disclosure of the Report, Petitioner claims, as he did in state courts, including in his Third § 440.10 Motion, he suffered a Brady violation due to same. (ECF No. 12 at 3-5.)

Under Brady v. Maryland, "suppression by the prosecution of evidence favorable to an accused . . . violates due process

46

where the evidence is material either to guilt or punishment." 373 U.S. 83, 87 (1963). A successful Brady claim must satisfy three criteria: (1) the evidence at issue must be favorable to the accused party, meaning it is either exculpatory or able to be used for impeachment purposes; (2) said evidence must have been suppressed by the prosecution, either willfully or inadvertently; and (3) the accused must have suffered prejudice. See Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Crucially, the "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Furthermore, "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted). Under Brady and its progeny, there is no obligation on the prosecution to disclose evidence prior to trial; yet, disclosure must occur at such time that it provides defense with an "opportunity to use the evidence." Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001).

As the state court found in denying Petitioner's Third § 440.10 Motion, the record establishes the defense "was made aware, during the course of the trial, that duct tape recovered at the scene was found with fingerprints matching those of the

47

codefendant." (Dec. 29, 2021 Sup. Ct. Order at 2.) This Court's review of the state record does not warrant a different result; indeed, the disclosure was made within a day of the prints being discovered on the duct tape, and before the trial had concluded. While the fingerprint evidence was surely material, it was not suppressed from the defense. And, although the defense may have wished to have learned of this evidence sooner, the defense employed it to its advantage when, during its summation, Petitioner's defense counsel both insisted the lack of Petitioner's fingerprints at the crime scene "shows you [Petitioner] was not there" and attacked James' testimony as not being credible because James testified Petitioner was the perpetrator who duct taped him. (Trial Tr. at 1101.) If anything, the disclosure of the Report prior to the conclusion of the trial bolstered the defense's position. Hence, the state court's finding that the late disclosure of the Report was not a <u>Brady</u> violation was neither contrary to, nor an unreasonable application of, any clearly established federal law.

In sum, neither of Petitioner's two arguments advanced in support of Ground Five is availing. Therefore, Petitioner is not entitled to habeas relief pursuant to Ground Five.

F.   <u>Ground Six:  Ineffective Assistance of Counsel Based Upon Failure to Adequately Challenge the Legality of the Vehicle Stop</u>

As he did in many of his state court filings, here, Petitioner claims his defense counsel was ineffective because counsel failed to adequately challenge the legality of Petitioner's Vehicle Stop. (ECF No. 12 at 6-8; see Second Am. Pet.) Petitioner's Vehicle Stop-based ineffective assistance claim fails.

In the decisions on Petitioner's Second and Fourth § 440.10 Motions, the state courts determined Petitioner's Vehicle Stop claim was both procedurally precluded and meritless. The denial of Petitioner's Fourth § 440.10 Motion presents the last reasoned decision regarding this claim; in rejecting it, the court invoked a state procedural rule outlined in C.P.L. § 440.10(3)(b). Subsection (3)(b) provides that a § 440.10 motion may be denied if it "was previously determined on the merits on a prior motion . . . in a court of this state, other than an appeal from the judgment, . . . unless since the time of such determination there has been a retroactively effective change in the law controlling such issue."

Petitioner's Second § 440.10 Motion was rejected on both procedural and substantive grounds, with the court explicitly stating Petitioner failed to demonstrate in what manner his trial counsel was deficient. (Apr. 4, 2018 Sup. Ct. Order at 1.) As such, the Fourth § 440.10 Motion was appropriately rejected as previously decided on the merits. (Dec. 26, 2023 Sup. Ct. Order

49

at 4-5.)  Since the procedural bar of C.P.L. § 440.10(3)(b) is widely recognized by courts in this Circuit, the state court's rejection of the claim on this basis was supported by an adequate and independent state law ground; therefore, this Court is barred from reviewing it now.[14]  See Dorcinvil v. Kopp, 710 F. Supp.3d 128, 151 (E.D.N.Y. 2024) (collecting cases).

Continuing, Petitioner does not provide any adequate explanation for his procedural default.  Nevertheless, even if this Court were to consider the merits of this ineffective assistance claim, it would fail the double deferential standard imposed under AEDPA.

In denying Petitioner's Fourth § 440.10 Motion, the state court found Petitioner's Vehicle Stop-related ineffective assistance claim was based upon "unsupported, speculative assertions." (Dec. 26, 2023 Sup. Ct. Order at 4.)  As this Court has already stated:  Counsel's failure to make a meritless and baseless argument does not constitute ineffective assistance. (See, e.g., supra at43-44, 45-46); see also Herron, 2025 WL 821883, at *9.

---

[14]  In deciding the same motion, the court also alternatively invoked the procedural bar under C.P.L. § 440.10(3)(c), denying all claims that differed from those asserted previously "as defendant had ample opportunity to raise them in a prior CPL § 440.10 motion, but failed to do so." (Dec. 26, 2023 Sup. Ct. Order at 4-5.)  This rule, too, presents an adequate and independent state law ground.  See Murden v. Artuz, 497 F.3d 178, 192-93 (2d Cir. 2007).

Furthermore, the record belies Petitioner's attempt to misrepresent counsel's actions with respect to challenging the Vehicle Stop. Indeed, the probable cause for Petitioner's arrest on August 10, 2010, and the investigation that led to both the August 10 stop and the preceding Vehicle Stop, was the subject of a pretrial hearing. (Hr'g Tr. at 16-33, 86-87.) Since Petitioner was not arrested or searched, and nothing was seized from him during the Vehicle Stop, and he does not claim otherwise, there was no reason for his defense counsel to challenge the Vehicle Stop itself, which counsel explained to Petitioner at that time (see Second § 440.10 Mot. at 17, 18, 19), and which he has explained to this Court via his affirmation. (See Lo Piccolo Aff. at 1-2.) With this, the claim fails to satisfy the first prong of Strickland.

Further, as to the second Strickland prong, Petitioner cannot establish prejudice since he fails to demonstrate the Vehicle Stop was illegal and that defense counsel's further questioning about it would have led to such determination by the court. Moreover, since nothing was seized from Petitioner during the Vehicle Stop, nor was he detained, it is unclear as to what remedy, if any, Petitioner would be entitled.

Therefore, Ground Six does not entitle Petitioner to habeas relief; on this basis, the Petition is denied.

G.    Ground Seven:  Fourth Amendment Claim

In addition to claiming his counsel was ineffective, Petitioner also insists the Vehicle Stop was a violation of his Fourth Amendment rights to be free of search and seizure.  (ECF No. 12 at 6-7; see Second Am. Pet.)  However, Petitioner's Fourth Amendment challenge is improperly before this Court since, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the grounds that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976).  The Second Circuit "interpreted Powell as requiring only that the state courts provide an opportunity for full and fair litigation of a fourth amendment claim, unless, of course, the petitioner can demonstrate that the state failed to provide a corrective process, or can point to an unconscionable breakdown in that corrective process." Capellan v. Riley, 975 F.2d 67, 71 (2d Cir. 1992) (internal quotation marks and citations omitted); see Ethridge v. Bell, 49 F.4th 674, 686 (2d Cir. 2022) ("[W]e have held that New York state courts provide facially adequate procedures to redress Fourth Amendment violations." (citing Capellan)).

Petitioner could have, but did not, raise his Fourth Amendment claim at his pre-trial hearing.  Instead, he raised the claim on direct appeal, which was rejected by the Appellate

Division since the claim was unpreserved for the appellate review. See People v. Williams, 176 A.D.3d at 1124. Petitioner raised the claim again in his pro se application for leave to appeal in the Court of Appeals, which was denied as well. See Williams, 34 N.Y.3d at 1134.

Since New York provides adequate corrective procedures to address claims under the Fourth Amendment and Petitioner failed to establish an unconscious breakdown of such process occurred, he cannot overcome the procedural bar under Stone. Additionally, as explained supra, Petitioner cannot attribute his failure to raise this claim to ineffective assistance of counsel since the underlying claim wholly lacks any merit. Therefore, Petitioner is not entitled to habeas relief pursuant to Ground Seven of the Petition.

H.    Ground Eight:  State Court's Alleged Errors in
      Denying the Fourth C.P.L. § 440.10 Motion

Petitioner claims, for the first time in this Petition, that the denial of his Fourth § 440.10 Motion was "arbitrary, capricious, whimsical or manifestly unreasonable" or that the state court's decision resulted in an "unconscionable breakdown of New York State['s] corrective mechanism." (Second Am. Pet. at 1-2.) While Petitioner sought leave to appeal the denial of the Fourth § 440.10 Motion to the Appellate Division, he never raised the argument he advances now. Yet, since New York law does not

entitle Petitioner to a second attempt to seek leave to appeal from the same decision, this unexhausted claim can no longer be exhausted in the state courts, and as such, is deemed to be procedurally defaulted.  See C.P.L §§ 450.15(1), 460.10(4)(a).

While the claim is unexhausted but defaulted, Petitioner does not explain the reason for the default or any resulting prejudice.  Nor does Petitioner claim that the failure to consider the claim would result in the fundamental miscarriage of justice; moreover, this Court finds no such result.

Furthermore, even if the Court were to look at the merits of this claim, Petitioner would not be entitled to the habeas relief on this Ground since he fails to allege a cognizable federal habeas claim.  The state court relied upon state procedural bars in denying Petitioner's Fourth § 440.10 Motion, and Petitioner does not allege any violation of the Constitution or federal law. As such, Ground Eight does not entitle Petitioner to habeas relief; hence, it is rejected as a basis to grant the Petition.

<u>CONCLUSION</u>

Accordingly, for all the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Petition (ECF Nos. 1, 12, 46), is DENIED in its entirety.  The Clerk of the Court is directed to: dismiss

the Petition; close the case; and, mail a copy of this Order to Petitioner.

Further, the Court:

(A) Declines to issue a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2); and

(B) Pursuant to 28 U.S.C. § 1915(a)(3), certifies that any appeal from this Order would not be taken in good faith, and, therefore, in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    September 29, 2025
          Central Islip, New York